IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                               *

BRUCE HAKE, *et al.*,
                                               *

     Plaintiffs,
                                               *

        v.                             CIVIL NO.: WDQ-13-1312
                                               *

CARROLL COUNTY, MARYLAND,
*et al.*,
                                               *

     Defendants.                             *

*    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM OPINION

Bruce A. Hake and others (collectively "the Plaintiffs")[1]
sued Carroll County, Maryland, (the "County") by its Board of
Commissioners (the "Board), (collectively "the Defendants")[2], for
violating the Establishment Clause of the First Amendment.  For
the following reasons, the Defendants' motion to dismiss for
failure to join a necessary and indispensable party will be
denied.  The Defendants' motion for leave to file a supplemental
statement of authority will be denied.  The Plaintiffs' motion
for a preliminary injunction will be granted.

---

[1] The American Humanist Association, Lauren Graybill, Bruce A.
Hake, Cornelius M. Ridgely, and Judy Smith are the plaintiffs in
this case.  ECF No. 12 at 1.

[2] The Defendants also include the members of the Board in their
official capacities:  Commissioner Doug Howard, Commissioner
Robin B. Frazier, Commissioner Richard S. Rothschild,
Commissioner David H. Roush, and Commissioner Haven N.
Shoemaker, Jr.  ECF No. 12 at 1, 3 ¶ 10.

I.    Background[3]

Carroll County is a political subdivision of the State of
Maryland and the Board is the County's legislative body.  ECF
No. 12 ¶ 9.  The American Humanist Association ("AHA") is a
nonprofit organization incorporated in Illinois with its
principal place of business in Washington, D.C.  ECF No. 12 ¶ 5.
Lauren Graybill is a member of AHA.  *Id.*  Each plaintiff is a
resident of Carroll County who has attended one or more Board
meetings.  *Id.* ¶ 6.

The Board holds public sessions on average more than once a
week.  ECF No. 12 ¶ 12.  The Board meetings are broadcast on
local television and video recordings are also posted on the
Board's website.  *Id.* ¶ 13.  The Board opens every public
general session meeting with an official prayer delivered by a
Commissioner on a rotating basis.  *Id.* ¶ 14.  The Board's only
official policy regarding the opening prayer is found in the Ten
Governing Principles adopted on December 18, 2010.  *See* ECF No.
16 at 6; ECF No. 16, Ex. 6.  This document states: "Affirmation
of Our Values: This Board of County Commissioners will open its

_____

[3] For purposes of a motion to dismiss, the well-pled allegations
in the complaint are accepted as true.  *Brockington v. Boykins*,
637 F.3d 503, 505 (4th Cir. 2011).  The Court will consider the
pleadings, matters of public record, and documents attached to
the motions that are integral to the complaint and whose
authenticity is not disputed.  *See Philips v. Pitt Cnty. Mem'l
Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

meetings with the Pledge of Allegiance followed by a prayer." ECF No. 16, Ex. 6 ¶ 6.  In practice the prayers are delivered before the Pledge of Allegiance.  ECF No. 16 at 6.  The Board provides "voluntary guidelines" for prayer-givers on the podium which in part provides: "Refrain from using Jesus, Jesus Christ, Savior, Prince of Peace, Lamb of God and the like."  ECF No. 16 at 6; ECF No. 16, Ex. 7 ¶ 3.

The Plaintiffs allege that the prayers delivered by each Commissioner "are frequently Christian in nature, making express sectarian references, such as to Jesus Christ."  ECF No. 12 ¶ 15.  The Plaintiffs' review of video recordings of the meetings during 2011 and 2012 show that sectarian prayers with Christian references were delivered at meetings on at least 54 occasions. *Id.* ¶ 16.  The Defendants included their own summary list of the prayer references in recorded meetings in 2011 and 2012. *See* ECF No. 16-8.  The Court's review of this list reveals that, of the meetings with audible and complete recordings, at least 40 percent of the opening prayers contained sectarian references.[4] During this time, "none of the official prayers delivered by the

---

[4] *See* ECF No. 16-8.  The summary included a list of 154 meetings, 46 of which contained sectarian references such as "Jesus" or "Savior." *Id.*  The list indicated that 41 of the meetings had inaudible or incomplete recordings of the opening prayers, which the Court excluded from its calculation. *Id.*

Commissioners mentioned non-Christian deities or used non-Christian language." *Id.* ¶ 17.

The Plaintiffs allege that the sectarian prayers are "divisive and exclusionary," and that as a result, "they are unwelcome at Board meetings and political outsiders in their own community." ECF No. 12 ¶ 7. Hake, a practicing Roman Catholic, alleges that attending Board meetings forces him to "participate in proceedings that violate his religious faith." *Id.* ¶ 8. On March 7, 2012, the AHA sent a letter to the Board "informing the Commissioners that their sectarian prayer practice was unconstitutional." ECF No. 12 ¶ 18. The Board's prayer practice continued unchanged. *Id.* ¶ 19.

On May 1, 2013, the Plaintiffs sued Carroll County, Maryland for violating the Establishment Clause of the First Amendment, seeking various relief. ECF No. 1.[5] On May 1, 2013, the Plaintiffs moved for a preliminary injunction. ECF No. 2.

---

[5] In the verified complaint, Hake and Ridgely bring the action against the Defendants under 42 U.S.C. § 1983 for violations of the Establishment Clause of the First Amendment. ECF No. 1 ¶¶ 27-29. The Plaintiffs seek several forms of relief:

   (1) A declaratory judgment that the Defendants' prayer
       practice violates the Establishment Clause;
   (2) An injunction enjoining the Defendants from allowing
       official sectarian prayers to be delivered;
   (3) A judgment for nominal damages; and
   (4) An award for reasonable costs and attorneys' fees.

ECF No. 1 at 7.

On June 10, 2103, the Plaintiffs filed an amended complaint. ECF No. 12.[6] On June 28, 2013, the Defendants moved to dismiss for failure to join necessary and indispensable parties. ECF No. 15. On June 28, 2013, the Defendants opposed the motion for a preliminary injunction. ECF No. 16. On July 12, 2013, the Plaintiffs replied. ECF No. 19. On July 12, 2013, the Plaintiffs also opposed the motion to dismiss. ECF No. 20. On July 29, 2013, the Defendants replied. ECF No. 21. On September 23, 2013, the Defendants moved for leave to file supplemental authority in support of the motion to dismiss. ECF No. 24. On October 1, 2013, the Plaintiffs opposed the motion to supplement. ECF No. 25. On January 10, 2014, the Court held a hearing on the motion for a preliminary injunction. ECF No. 29.

II. Analysis

    A.    The Defendants' Motion to Dismiss

        1.    Legal Standard

Under Fed. R. Civ. P. 12(b)(7), the Court may dismiss an action if a necessary party cannot be joined and is indispensable to resolution of the action. The Court first considers whether an absent party is necessary under Fed. R. Civ. P.

---

[6] The amended complaint adds the American Humanist Association, Judy Smith, and Lauren Graybill to the Plaintiffs. ECF No. 12 at 1.

19(a).[7]  If so, the Court considers whether joinder is possible.
If joinder is possible, the Court will order that the party be
joined.  If joinder is not possible, the Court considers, under
Rule 19(b),[8] whether to proceed without the party or dismiss the
action.  *Owens-Ill., Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir.
1999).  A party cannot be indispensable unless it is necessary,
but not all necessary parties are indispensable.  *Schlumberger
Indus. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1285-86 (4th Cir.
1996).

The defendants bear the burden of showing that a missing
party is necessary and indispensable.  *R-Delight Holding LLC v.
Anders*, 246 F.R.D. 496, 499 (D. Md. 2007).  The decision to

---

[7] Under Fed. R. Civ. P. 19(a)(1), a party is necessary to the
action if:

(A) in that person's absence, the court cannot accord
complete relief among existing parties; or

(B) that person claims an interest in the subject of
the action and is so situated that disposing of the
action in the person's absence may:

(i) . . . impair or impede the person's ability
to protect the interest; or

(ii) leave an existing party subject to a
substantial risk of incurring double, multiple,
or otherwise inconsistent obligations because of
the interest.

[8] Under Fed. R. Civ. P. 19(b), when a necessary party cannot be
joined, "the court must determine whether, in equity and good
conscience, the action should proceed among the existing
parties."

dismiss is in the Court's sound discretion, and it will order
dismissal only when "prejudice or inefficiency will certainly
result" from hearing the action without the party.  *Owens-Ill.,*
*Inc.*, 186 F.3d at 441.

2.    Necessary and Indispensable Parties

The Defendants argue that the Court should dismiss the
Plaintiffs' claims under Fed. R. Civ. P. 12(b)(7) because the
Commissioners in their individual capacities are necessary and
indispensable parties.  ECF No. 15 at 1.  The Plaintiffs contend
that the Commissioners are not necessary parties under Fed R.
Civ. P. 19(a) because the Court can award complete relief in
their absence, and they do not have a legitimate interest at
stake.  ECF No. 20 at 6-7.

In their amended complaint, the Plaintiffs allege that the
Defendants' "established practice of permitting Commissioners
regularly to deliver official sectarian prayers to the public as
part of its Board meetings" violates the Establishment Clause of
the First Amendment.  ECF No. 12 ¶ 29.  In their request for
various relief, the Plaintiffs seek an injunction against
Carroll County and the Commissioners in their official capacity
from "delivering or allowing to be delivered official sectarian
prayers before, during, or after Board meetings."  ECF No. 12 at
7-8.  The Defendants assert that the Court is unable to award
complete relief because an injunction against the named

7

defendants would not bind the Commissioners in their individual capacities from continuing to engage in sectarian prayer at Board meetings. ECF No. 15-2 at 5.

However, if the Plaintiffs were to prevail in this action, an order directing Carroll County to prohibit official sectarian prayers at Board meetings would afford complete injunctive relief. The County may regulate the content of legislative prayers if they are considered government speech. *See Simpson v. Chesterfield Cnty. Bd. of Supervisors*, 404 F.3d 276, 288 (4th Cir. 2005). The prayers involved here are properly classified as government speech, and not speech given in a personal capacity. The Fourth Circuit has adopted a four-factor test for determining if speech can be attributed to the government, the court must consider:

> (1) the central purpose of the program in which the speech in question occurs; (2) the degree of editorial control exercised by the government or private entities over the content of the speech; (3) the identity of the literal speaker; and (4) whether the government or the private entity bears the ultimate responsibility for the content of the speech.

*Turner v. City Council of City of Fredericksburg*, 534 F.3d 352, 354 (4th Cir. 2008) (internal quotation marks and citations omitted).

Here, the prayer is an official part of every Board meeting, it is listed in the Boards' Governing Principles, and it is delivered along with the Pledge of Allegiance. *See* ECF

No. 16, Ex. 6. The person delivering the prayer at each meeting is an elected Commissioner. The central purpose of the Board meeting is governmental in nature. As to the second and third factors, the Board has considerable editorial control over the speech because only Commissioners are permitted to deliver the prayers. Even though the Commissioners take personal responsibility for their prayers, "given the focus of the prayers on government business at the opening of the [Board's] meetings," the prayers are government speech. *See Turner*, 534 F.3d at 355. The Fourth Circuit has even considered legislative prayers given by non-government officials to be government speech. *See Simpson*, 404 F.3d at 288.

Because the legislative prayers delivered at the County's Board meetings are government speech, rather than prayers given in a personal capacity, the County may establish a policy prohibiting Commissioners from delivering sectarian prayers.[9]

---

[9] *See Turner,* 534 F.3d at 356. In *Turner*, the Fourth Circuit held that the City Council for the City of Fredericksburg, Virginia's policy of opening council meetings with nondenominational, nonsectarian prayers was permissible under the Establishment Clause. *Id.* The Fourth Circuit in *Simpson* also found that, because an opening invocation was government speech, the Board could regulate its content:

> The avowed purpose of the invocation is simply that of a brief pronouncement of simply values presumably intended to solemnize the occasion. The invocation is not intended for the exchange of views or other public discourse. Nor is it intended for the exercise of one's religion . . . . The context, and to a degree, the content of the invocation segment is governed by

The Fourth Circuit has found that a policy requiring nonsectarian prayers does not violate the First Amendment rights of an individual board member.[10] Without an individual right to engage in sectarian prayers at Board meetings, Commissioners would not have a right to deliver sectarian prayers in defiance of a County policy. *See Turner*, 534 F.3d at 356. Accordingly, an injunction against Carroll County would afford the Plaintiffs complete relief by requiring the County to establish an enforceable policy that would prohibit individual Commissioners from engaging in sectarian prayers at Board meetings. Additionally, because the Commissioners do not have an individual right to deliver sectarian prayers at the opening of Board meetings, the Defendants have not shown that the Commissioners in their individual capacities have a cognizable

---

established guidelines by which *the Board may regulate the content of what is or is not expressed* when it enlists private entities to convey its own message.
*Simpson*, 404 F.3d at 288 (internal quotation marks omitted) (emphasis added).

[10] *See Turner*, 534 F.3d at 356. The Fourth Circuit held that the Council's policy prohibiting sectarian prayer did not violate a council member's individual rights, holding that:

Turner was not forced to offer a prayer that violated his deeply-held religious beliefs. Instead, he was given the chance to pray on behalf of the government. Turner was unwilling to do so in the manner that the government had proscribed, but remains free to pray on his own behalf, in nongovernmental endeavors, in the manner dictated by his conscience. His First Amendment and Free Exercise rights have not been violated.

*Id.*

interest in this litigation. Accordingly, they are not necessary parties, and Defendants' motion to dismiss for nonjoinder will be denied. *See* Fed. R. Civ. P. 19(a).

      B.     The Defendants' Motion for Leave to File Supplemental Authority

The Defendants move for leave to file additional authority to support their motion to dismiss. ECF No. 24. The Defendants contend that they should be permitted to file a surreply because they have "become aware" of additional authority. ECF No. 24-1 at 1. The Defendants' supplemental statement references an *amicus curiae* brief filed by the U.S. Solicitor General in *Town of Greece v. Galloway*, 681 F.3d 20 (2d Cir. 2012), *cert. granted*, 133 S. Ct. 2388 (2013). ECF No. 24-1. The brief points out that the district court in *Greece* dismissed the claims against the Town Supervisor in his official capacity as duplicative of the claims against the town. ECF No. 24-1 at 2, ECF No. 24-2 at 12 n.1.

Unless otherwise ordered by the Court, a party generally may not file a surreply. Local Rule 105.2(a). Leave to file a surreply may be granted when the movant otherwise would be unable to contest matters presented for the first time in the opposing party's reply. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).

The Defendants' proposed supplemental statement does not address any new matter presented by the Plaintiffs. It also fails to provide any additional support to the Defendants' argument that the Commissioners in their individual capacities are necessary parties. Accordingly, the Defendants' motion for leave to file supplemental authority will be denied.

C.    The Plaintiffs' Motion for Preliminary Injunction

1.    Legal Standard

A preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (internal quotation marks omitted). Because issuing a preliminary injunction "requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way," "[t]he danger of a mistake in this setting is substantial." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994) (internal quotation marks omitted).

To obtain a preliminary injunction, the movant must demonstrate that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities favors him; and (4) an injunction is

in the public interest.[11]  The movant must show more than a

"grave or serious question for litigation"; instead, he bears

the "heavy burden" of making a "clear showing that [he] is

likely to succeed at trial on the merits." *Real Truth*, 575 F.3d

at 347, 351.  All four elements must be present. *Id*. at 346.

    2.   Likelihood of Success on the Merits

    The Defendants argue that the suit is unlikely to succeed

on the merits because there is "no County policy or custom

requiring sectarian prayer." ECF No. 16 at 9.  The Defendants

contend that the County policy calling for an opening prayer is

consistent with the Court's ruling in *Marsh v. Chambers*, 462

U.S. 783 (1983).  ECF No. 16 at 10.  The Defendants also assert

that the sectarian references are too infrequent to constitute a

violation of the Establishment Clause.  ECF No. 16 at 11.

    The Supreme Court in *Marsh* recognized the unique history of

legislative prayer. *See Marsh*, 463 U.S. at 791-92.  "[T]here

can be no doubt that the practice of opening legislative

sessions with prayer has become part of the fabric of our

society." *Id*. at 792.  The Court further noted that "[t]o

invoke Divine guidance on a public body entrusted in making the

---

[11] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20
(2008); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*,
575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 130
S. Ct. 2371, *reinstated in relevant part on remand*, 607 F.3d 355
(4th Cir. 2010) (per curiam).

laws is not, in these circumstances, an 'establishment' of religion or a step toward establishment; it is simply a tolerable acknowledgment of beliefs widely held among the people of this country." *Id.* The Fourth Circuit has approved the use of legislative prayers that have "recognized the rich religious heritage of our country in a fashion that was designed to include members of the community rather than to proselytize." *Turner*, 534 F.3d at 356.

The Fourth Circuit case law "sets out clear boundaries" for legislative prayer:

> [L]egislative prayer must strive to be nondenominational so long as that is reasonably possible -- it should send a signal of welcome rather than exclusion. It should not reject the tenets of other faiths in favor of just one. Infrequent references to specific deities, standing alone, do not suffice to make out a constitutional case. But legislative prayers that go further -- prayers in a particular venue that repeatedly suggest the government has put its weight behind a particular faith -- transgress the boundaries of the Establishment Clause.

*Joyner v. Forsyth Cnty., N.C.*, 653 F.3d 341, 349 (4th Cir. 2011). A neutral prayer policy does not shield the County from liability if the Board improperly exploits a prayer opportunity to advance one religion over others. *See Wynne v. Town of Great Falls, S.C.*, 376 F.3d 292, 298 (4th Cir. 2004). The Fourth Circuit has approved legislative prayer "only when it is nonsectarian in both policy and practice." *Joyner*, 653 F.3d at

14

348.[12] The implementation of a neutral prayer policy is insufficient "when the County [is] not in any way proactive in discouraging sectarian prayer in public settings." *Joyner*, 653 F.3d at 354.

In *Wynne*, the Fourth Circuit struck down a policy which allowed prayers that frequently contained references to Jesus Christ, to the exclusion of deities associated with any other religious faith, as advancing a religion in violation of the Establishment Clause. *See Wynne*, 376 F.3d at 298-302. In *Wynne*, the "sectarian references in invocations were far more than occasional or incidental." *Simpson v. Chesterfield Cnty. Bd. of Supervisors*, 404 F.3d 276, 283 (4th Cir. 2005). This practice differed significantly from the practice the Fourth Circuit validated in *Simpson v. Chesterfield Cnty. Bd. of Supervisors*, 404 F.3d 276 (4th Cir. 2005). In *Simpson*, the policy explicitly required nonsectarian prayers, aspired to non-sectarianism, and in practice, resulted in a wide variety of prayers. *See Simpson*, 404 F.3d at 278, 283-84.

The County has not adopted an official policy on the content of the opening prayers at Board meetings. See ECF No. 16 at 6. The Fourth Circuit precedent makes it clear that the content of the prayers is a critical factor in determining

---

[12] The Fourth Circuit has recognized references to "Jesus," "Jesus Christ," "Christ," or "Savior" as sectarian. *See Joyner*, 653 F.3d at 344.

whether a legislative prayer practice violates the Establishment Clause.[13] Although the podium guidelines discourage sectarian references, the Board has made no effort to curb the frequent sectarian references made by its own Commissioners. "[C]itizens attending Board meetings hear the prayers not the policy . . . we cannot turn a blind eye to the practical effects of the invocations at issue here." *Joyner*, 653 F.3d at 354. The record, although incomplete at this stage, indicates that sectarian prayers are offered in over 40 percent of Board meetings. *See* ECF No. 16-8. This demonstrates more than infrequent, occasional, or incidental sectarian references standing alone, especially in light of the lack of references to other deities.[14] At this time, the record indicates that the prayers invoked by Commissioners before Board meetings advance one religion to the exclusion of others. *See Joyner*, 653 F.3d

---

[13] *See Simpson*, 404 F.3d at 283-84 (noting the wide variety of prayers); *Wynne*, 376 F.3d at 298-99 (noting the frequent references to "Jesus Christ"); *Joyner*, 653 F.3d at 343 (relying on the actual content of the prayers, as evidenced by audio recordings, in concluding that the prayers frequently contained references to "Jesus Christ").

[14] *Compare Simpson*, 404 F.3d at 283-84 (constitutionally permissible prayer policy aspired to non-sectarianism and included a wide variety of prayers referencing non-Christian deities), *with Wynne*, 376 F.3d at 301-02 (prayer policy violated the Establishment Clause when the prayers repeatedly referenced "Jesus Christ" to the exclusion of other deities).

at 353.[15] Accordingly, the Plaintiffs have demonstrated likely success on the merits.

      3.    Irreparable Harm

In order to prevail on a motion for preliminary injunction, the Plaintiffs must demonstrate that they are likely to suffer irreparable harm in the absence of relief. The Supreme Court has held that the loss of First Amendment freedoms, even for minimal periods of time, "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Newsom ex rel. Newsom v. Albemarle Cnty. School Bd.*, 354 F.3d 249, 261 (4th Cir. 2003). Other circuit courts have applied the same principle in the context of Establishment Clause violations.[16]

---

[15] The Court does not foreclose the possibility that evidence from discovery may demonstrate that the prayers, taken as a whole, do not advance a particular faith. *Cf. Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 189, 192 (4th Cir. 2013) (approving preliminary injunction based on an undeveloped record).

[16] *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 302-03 (D.C. Cir. 2006) ("[W]e are able to conclude that where a movant alleges a violation of the Establishment Clause, this is sufficient, without more, to satisfy the irreparable harm prong for purposes of the preliminary injunction determination."); *Am. Civil Liberties Union of Ky. v. McCreary Cnty., Ky.*, 354 F.3d 438, 445 (6th Cir. 2003) (applying *Elrod* irreparable injury principle to an Establishment Clause violation); *Doe v. Duncanville Indep. School Dist.*, 994 F.2d 160, 166 (5th Cir. 1993) ("Assuming that the Does' Establishment Clause rights have been infringed, the threat of irreparable injury to the Does and to the public interest that the clause purports to serve are adequately demonstrated."); *Am. Civil*

Consistent with these cases, the Plaintiffs here are likely to suffer irreparable harm if denied preliminary relief. The Plaintiffs have alleged that the prayers delivered by Commissioners at the beginning of each Board meeting "are frequently Christian in nature, making express sectarian references, such as to Jesus Christ." ECF No. 12 ¶ 15. The evidence indicates that at least 40 percent of the prayers at meetings in 2011 and 2012 contained sectarian references. *See* ECF No. 16-8. There is no evidence that the prayers made reference to any non-Christian deities. ECF No. 12 ¶ 17. The Plaintiffs allege that they are residents of the County and have attended Board meetings with sectarian prayers. ECF No. 12 ¶ 6. The Plaintiffs "consider the Sectarian Prayers divisive and exclusionary, leaving them to conclude that they are unwelcome at Board meetings and political outsiders in their own community." ECF No. 12 ¶ 7. This practice of allowing sectarian prayers has continued. ECF No. 12 ¶ 19. As discussed above, *supra* Part II.C.2., the Plaintiffs have established that they are likely to prevail on the claimed Establishment Clause

---

*Liberties Union of Ill. v. City of St. Charles*, 794 F.2d 265, 275 (7th Cir. 1986); *Doe v. Pittsylvania Cnty., Va.*, 842 F. Supp. 2d 927, 934 (W.D. Va. 2012).

violations. Accordingly, they have demonstrated irreparable harm.[17]

   4.   Balance of Equities

The balance of equities weighs in favor of the Plaintiffs. The Plaintiffs' allegations establish that they are suffering irreparable harm from the Defendants' continuing violations of the Establishment Clause. The County will be "in no way harmed by issuance of a preliminary injunction which prevents [the County] from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction." *See Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002); *Newsom*, 354 F.3d at 261. Here, the Board will not be required to abandon the practice of legislative prayer altogether. *See Joyner*, 653 F.3d at 354. A preliminary injunction will still allow the Board to solemnize its meetings by delivering legislative prayers consistent with the Establishment Clause. *See Pittsylvania Cnty.*, 842 F. Supp. 2d at 935. Because the Board's prayer practice, on this record, is likely to be found unconstitutional, the balance of equities weighs heavily in favor of the Plaintiffs.

---

[17] *See Pittsylvania Cnty.*, 842 F. Supp. 2d at 935 (plaintiffs were likely to suffer irreparable injury when Board meetings were routinely opened with a Christian prayer).

### 5.    Public Interest

The granting of a preliminary injunction will also serve the public interest here.  The Defendants argue that the public interest would not be served by an injunction because the Commissioners offer prayers at their own discretion.  ECF No. 16 at 16.  However, as discussed above, *supra* Part II.A.2., the legislative prayers delivered by Commissioners at the beginning of every Board meeting are governmental speech, and are not given in their personal capacity.

The Fourth Circuit has held that "upholding constitutional rights surely serves the public interest."  *Giovani Carandola*, 303 F.3d at 521.  Accordingly, the public interest will be served by enjoining the Board from its unconstitutional practice of allowing repeated sectarian references in its legislative prayers.  The injunction will do nothing to impede the business of the Board.  "A preliminary injunction precluding the Board from repeatedly praying to one specific deity will not prevent the Board from opening its meetings with a constitutionally permissible invocation, from conducting its meetings, or from effectively performing its essential government functions."  *Pittsylvania Cnty.*, 842 F. Supp. 2d at 936.  Preventing the Board from repeatedly making sectarian reference in its opening prayers with a preliminary injunction will serve the public interest.

20

6.    Security

Under Federal Rule of Civil Procedure 65(c), a district court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Rule 65(c) is "mandatory and unambiguous." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999). Although the district court has "discretion to set the bond amount in such sum as the court deems proper," the court "is not free to disregard the bond requirement altogether." *Id.* (internal quotation marks omitted). The purpose of Rule 65(c) "is to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction." *Id.* at 421 n.3.

The amount of the security under Rule 65(c) "ordinarily depends on the gravity of the potential harm to the enjoined party." *Hoechst* at 421 n.3. "Security is generally fixed in an amount covering the potential incidental and consequential costs as well as either the losses the wrongly enjoined party will suffer or the amount of the complainant's unjust enrichment during the period of prohibited conduct." *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 904 F. Supp. 2d

530, 536 (D. Md. 2012) (*quoting Hoechst*, 174 F.3d at 421 n.3)
(internal quotation marks omitted).

Here, there will be no monetary damages or other harm to
the County from requiring that it conduct its Board meetings
without sectarian opening prayers, in accordance with the
requirements of the Establishment Clause. "Where the district
court determines that the risk of harm is remote, or that the
circumstances otherwise warrant it, the court may fix the amount
of the bond accordingly. In some circumstances, a nominal bond
may suffice." *Hoechst*, 174 F.3d at 421 n.3. Because there is a
remote risk of harm to the Defendants during the duration of the
preliminary injunction, the Court will require the Plaintiffs to
post only a nominal bond as security. The Court will fix the
amount of the security bond at one dollar.

       7.    Summary

Having met each of the requirements, the Plaintiffs' motion
for a preliminary injunction will be granted. The County will
be preliminarily enjoined from continuing its current practice
of frequently opening its Board meetings with sectarian prayers.
In accord with the injunction approved by the Fourth Circuit in
*Wynne*, the County will be enjoined, during the pendency of this
case, "from invoking the name of a specific deity associated
with any specific faith or belief in prayers given at [Board]
meetings." *Wynne*, 376 F.3d at 302. The Board remains free to

deliver non-sectarian invocations at the beginning of Board
meetings. Accordingly, consistent with Fourth Circuit
precedent, the preliminary injunction in this case is narrowly
crafted to protect the religious freedom and constitutional
rights of all citizens.

III. Conclusion

For the reasons stated above, the Defendants' motion to
dismiss and motion for leave to file supplemental authority will
be denied. The Plaintiffs' motion for a preliminary injunction
will be granted.

_3/25/11_
Date

William D. Quarles, Jr.
United States District Judge